Mrs. Mary Ellen **PRITCHARD**, Wife of
Charles C. Pritchard, et al.,
Appellants,

v.

Robert C. **DOWNIE**, Administrator of the
Estate of Eugene G. Smith, Appellee.

No. 17389.

United States Court of Appeals
Eighth Circuit.

Jan. 21, 1964.

Sidney W. Provensal, Jr., New Orleans,
La., for appellant.

Winslow Drummond, of Wright, Lindsey, Jennings, Lester & Shults, Little
Rock, Ark., Robert S. Lindsey, and Joseph
C. Kemp, Little Rock, Ark., for appellee.

Before VAN OOSTERHOUT,
MATTHES and MEHAFFY, Circuit
Judges.

VAN OOSTERHOUT, Circuit Judge.

The nine plaintiffs involved in these
eight suits brought against Eugene G.

Smith,[1] Chief of Police of the City of Little Rock, Arkansas, have appealed from final judgment dismissing their complaints. These eight cases were consolidated for trial and were tried to the court on the merits. Judge Young's opinion, setting forth his findings of fact with respect to each plaintiff's claim and the reasons why all of the actions should be dismissed, is reported at 216 F.Supp. 621.

Plaintiffs' causes of action are based upon alleged violation of their federally protected civil rights, particularly those of free speech and assembly. All of the plaintiffs except Mrs. Sosebee[2] claim they were wrongfully arrested and taken into custody on August 12, 1959. Some plaintiffs claim that unnecessary force was used in connection with their arrests. Plaintiffs assert they were falsely imprisoned and denied the opportunity to promptly post bail and that the plaintiffs who were minors should have been taken to the juvenile court rather than being temporarily lodged in jail.

On August 12, 1959, the Little Rock schools were being reopened on an integrated basis. Much of the background with respect to the serious difficulties encountered in connection with the attempt to integrate the Little Rock schools is set out in Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, and cases there cited. Plaintiffs at the time of their arrests were part of a group of some 200 people who had assembled initially at the State Capitol, had a meeting there, and then pursuant to a preconceived plan previously published in the newspapers marched toward the school. Their activities met with no interference or resistance until they reached an intersection about a block from the school where they were confronted by a police line and told to disperse and leave the street. Some of the group complied but plaintiffs continued what the court aptly describes as "an unlawful and riotous assembly."

Judge Young's well-considered opinion carefully summarizes his findings with respect to the activity of each of the plaintiffs. We have carefully examined the extensive record containing some 687 pages. Much of the testimony is conflicting. No purpose will be served in discussing the evidence in detail. Judge Young in his opinion has very satisfactorily demonstrated that substantial evidence supports his finding that probable cause existed for the arrest of each of the plaintiffs and the further finding that only the minimum force necessary to effect the arrest was made in the situations where plaintiffs resisted arrest.

The only case cited by plaintiffs in support of reversal in their entire brief is that of Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697. Said case is cited in support of plaintiffs' contention that their right of free speech and peaceful assembly guaranteed by the First Amendment and protected by the Fourteenth Amendment from invasion by the states has been abridged. It is quite true that the Supreme Court in Edwards, upon the basis of the facts there presented, determined that the defendants' arrests and convictions on a state breach of peace charge infringed defendants' federally protected rights of free assembly and free speech. The Court in Edwards, at page 236 of 372 U.S., at page 683 of 83 S.Ct., distinguishes the

---

1. Defendant Smith died after the commencement of these actions. His administrator has been subsituted as defendant. This court has heretofore held that the causes of action survived, Pritchard v. Smith, 8 Cir., 289 F.2d 153, 88 A.L.R. 2d 1146, and that the administrator should be substituted as defendant. Downie v. Pritchard, 8 Cir., 309 F.2d 634.

2. Mrs. Sosebee was not arrested. The court with respect to Mrs. Sosebee states

that she was either pushed back by the police or knocked down inadvertently by an officer while he was trying to fend off an attacker. The court's basis for dismissal of Mrs. Sosebee's claim is thus stated: "The facts indicate that Mrs. Sosebee's injuries if any, were negligible. In fact, she stated that after her fall she went back to the curb and stayed until the crowd dispersed. Chief Smith was in no way connected with Mrs. Sosebee's fall."

case from Feiner v. New York, 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 267, and recognizes that the rights of free speech and assembly are subject to some reasonable limitations. In Feiner v. New York, the Court quoted from Cantwell v. Connecticut, 310 U.S. 296, 308, 60 S.Ct. 900, 84 L.Ed. 1213, including the following:

"No one would have the hardihood to suggest that the principle of freedom of speech sanctions incitement to riot or that religious liberty connotes the privilege to exhort others to physical attack upon those belonging to another sect. When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the State to, prevent or punish is obvious." 340 U.S. 315, 320, 71 S.Ct. 303, 306.

And as a basis for sustaining a state conviction, states:

"It is one thing to say that the police cannot be used as an instrument for the suppression of unpopular views, and another to say that, when as here the speaker passes the bounds of argument or persuasion and undertakes incitement to riot, they are powerless to prevent a breach of the peace. * * * The findings of the state courts as to the existing situation and the imminence of greater disorder coupled with petitioner's deliberate defiance of the police officers convince us that we should not reverse this conviction in the name of free speech." 340 U.S. 315, 321, 71 S.Ct. 303, 306.

■ Our present case is factually distinguishable from Edwards in a number of material respects. In Edwards the Court found that the state statute was ambiguous and that the activity was confined to the capitol grounds and that there was no violence or threat of violence. In our present case, subsequent to the assembly and meeting on the State House grounds, the marchers proceeded down the street for some twelve blocks and were stopped only when they reached the vicinity of the school, at which point some engaged in violence in an effort to break through the police line. Upon the basis of substantial evidence, the court was justified in finding the conduct of the marchers to be riotous.

Press releases had indicated an intention on the part of the marchers to go to the school ground where some of the mothers proposed to remove some of their children from the school. In the light of the history of the violent disturbances at the school in connection with the previous attempts to integrate, some of which are described in Cooper v. Aaron, supra, a rational basis existed for stopping the riotous mob before it reached the school ground. As the trial court clearly points out in its opinion, the plaintiffs in their forceful efforts to reach the school ground had in their riotous conduct violated one or more reasonable existing Arkansas statutes designed to meet such situations.

■■ Moreover, in Edwards the appeal was from a conviction. Here the claim is false arrest. An arrest is justified if probable cause exists therefor. The burden of proving probable cause for arrest is considerably lighter than that involved in sustaining a conviction. The record shows that a large number of persons other than plaintiffs were arrested on this day. All were processed as rapidly as possible. All of the plaintiffs were released on bond. Some were released within an hour or two after the arrests and all were released from custody within five or six hours thereafter.

■ Some of the plaintiffs are juveniles. Complaint is made that they were taken to jail rather than to juvenile court and that this constitutes a denial of equal protection of the law. Plaintiffs have failed to point to any constitutional requirement or interpretative case holding that the placing of an arrested juvenile in jail for a few hours is a violation of his federal constitutional rights. Like the trial court, we find no cases supporting the minor plaintiffs' contention that their short period of incarcera-

tion after their arrests constitutes a denial of any federal constitutional right.

■■ Plaintiffs urge that the trial court committed error in receiving over their objection movies taken at the scene of arrest by newsmen and police officers and also some film showing 1957 demonstrations against integration. In admitting the film after its nature and method of assembly had been fully explained, the court stated:

"I realize the inherent defects of a film of that kind, taken by a number of people and which results in repetition. I think it has some value and I think I understand its limitations. Objection to it will be overruled."

The sufficiency of preliminary proof to warrant the admission of a picture or a movie into evidence rests largely within the discretion of the trial court. The matter of editing of the film goes to the weight of the evidence and not its admissibility. Millers' Nat'l Ins. Co. v. Wichita Flour Mills Co., 10 Cir., 257 F.2d 93, 100. See McGeorge Contracting Co. v. Mizell, 216 Ark. 509, 226 S.W.2d 566, 570.

■ The fact that the movie film contained a collection of pictures taken by a number of photographers and that it was repetitious and was edited was fully understood by the trial court. The pictures were exhibited to this court during oral argument. We are entirely satisfied that the court did not abuse its discretion in receiving the film in evidence. We are of the view that the court could not possibly have been misled or misguided by its viewing of the film. The oral testimony of the witnesses, apart from the movies, strongly supports the court's findings. We have frequently stated that it is virtually impossible for a trial judge in a nonjury case to commit reversible error by receiving incompetent evidence. Green v. Dingman, 8 Cir., 234 F.2d 547, 553; Builders Steel Co. v. Commissioner, 8 Cir., 179 F.2d 377, 379.

Inasmuch as what we have heretofore said requires an affirmance, we do not reach the question of whether the trial court correctly determined that Smith is liable only for his own acts and not for the independent acts of other police officers.

Our examination of the record and a full consideration of the errors urged as a basis for reversal leads us to the inescapable conclusion that the court committed no error in dismissing the complaints in each of the consolidiated actions.

Affirmed.