Lawrence GUYOT et al., Appellants,

v.

M. B. PIERCE et al., Appellees.

No. 22990.

United States Court of Appeals
Fifth Circuit.

Feb. 14, 1967.

Alvin J. Bronstein, Jackson, Miss., Jack Greenberg, Melvyn Zarr, New York City, Henry M. Aronson, Carsie A. Hall, Jackson, Miss., John Honnold, Jr., Philadelphia, Pa., Anthony G. Amsterdam, Washington, D. C., of counsel, for appellants.

J. A. Travis, Jr., E. W. Stennett, Thomas H. Watkins, William A. Allain, Elizabeth W. Grayson, Joe T. Patterson, Atty. Gen. of Mississippi, Jackson Miss., for appellees.

Before BROWN and COLEMAN, Circuit Judges, and DAWKINS, District Judge.

COLEMAN, Circuit Judge.

This is a companion case to Strother v. Thompson, 372 F.2d 654, this day decided. This appeal challenges § 135 of the Uniform Traffic Regulation Code of the City of Jackson, Mississippi.[1] Ap-

1. Excerpts from the Uniform Traffic Code:

"SECTION 1. The Council of the City of Jackson, Mississippi, having heretofore found, and now again finding, determining and declaring that in order to safeguard and protect the life and safety and to promote the general welfare of the residents and citizens of this city, a public necessity now exists for the exercise of its police power in the regulation and control of traffic on the streets of the City of Jackson and in order to secure an orderly movement of pedestrians on its sidewalks and streets, and an orderly movement of vehicular traffic in the portions of its streets reserved therefor, it therefore ordains, establishes and promulgates this code which shall be known, and may be cited as 'THE UNIFORM TRAFFIC REGULATION CODE'.

"SECTION 133. PURPOSE OF STREETS AND SIDEWALKS—The City of Jackson maintains its streets and sidewalks for the purpose of affording pedestrians the right, privilege and opportunity to move orderly and safely from place to place on its sidewalks and across its streets in the normal, usual, customary and daily manner of such movement; and the City of Jackson maintains the vehicular portions of its streets for the purpose of affording the public in general the right, privilege and opportunity to move goods, wares and merchandise and other personal property and people orderly and safely from place to place thereon, principally by the use of vehicles in the normal, customary and daily manner of such movements, and the assumption of any other right by anyone and any attempt to use the public thoroughfares of the City of Jackson for any other use or purpose and in any other manner is the assumption of a right, and an attempt to make a use not shared in by the general public, and is contrary to public policy and, therefore, the provisions of this Code relative to the use of streets and sidewalks in the City of Jackson shall be construed most strongly against the person violating the provisions hereof.

"SECTION 135. CERTAIN USES OF STREETS UNLAWFUL—It shall be unlawful for any person to operate, or cause to be operated, any unusual type of vehicle differing from vehicles ordinarily and customarily appearing on the streets; or any vehicle from which singing, shouting and the like disseminate, or from which is disseminated any loud or unusual noises whatsoever; or from which is thrown or from which falls any debris, refuse or rubbish of any kind; or to conduct or participate in any parade or marching in which floats, banners, placards or other distracting agencies, noises, objects or vehicles are used; and for any person to engage in shouting, singing, orating, speaking or any other distracting activity of any kind on any of the public streets and thoroughfares of the City of Jackson, provided, however, the City Council, in its discretion, may grant special permission for parades and other unusual activities on the streets, when, in its opinion, such parades or other activities will not be distracting to the extent of disturbing the usual, normal and customary uses of the streets and would not constitute a disturbance to the people living or conducting businesses thereon.

"SECTION 136. PENALTY FOR VIOLATION OF THIS ARTICLE—Any person violating any of the provisions of

pellants say that the Ordinance cannot be squared with Federal Constitutional standards and is thus void on its face. As the analysis to follow will reveal, we are compelled to agree.

The suit likewise challenged Jackson City Ordinance No. 594, Revised 1938. The City points out, however, that this Ordinance was repealed by the enactment of the Uniform Traffic Code, so we need consider it no further.

We are aware that § 135 was involved in a decision of this Court [before another panel] in National Association of Colored People, et al. v. Thompson, Mayor of City of Jackson, 357 F.2d 831 (1966), in which Judge Whitaker, Senior Judge of the Court of Claims, sitting by designation, wrote a comprehensive, well balanced opinion. In that case, however, it was contended only that the Ordinance, along with others, had been unconstitutionally applied.

The Supreme Court of Mississippi has not construed or defined the application of Ordinance 135. That Court did consider the general subject in King v. City of Clarksdale, Miss., 186 So.2d 228 (1966).[2] There a Clarksdale ordinance prohibiting parading or marching without the written permission of the Chief of Police, but stating no rules or standards for its application or enforcement, was unanimously held invalid as conferring upon the Chief of Police unrestricted discretion as to who shall or shall not be permitted to parade or march on the sidewalks or streets of the City, with no standards as to time, place of marching or any other feature.

As in *Strother*, the Mississippi Legislature was about to be convened in extraordinary session, in June, 1965, in an effort [which met with success] to relax previously existing state literacy requirements as to registering and voting. Although the special session was called for the purpose of putting an end to restrictions and limitations which, for years, these plaintiffs had vigorously opposed, they nevertheless wanted to protest the session because they claimed it was for the purpose of circumventing voting rights legislation then pending in the Congress.

After meeting in a church in the vicinity of downtown Jackson, about four hundred persons began a march to the State Capitol, where the Legislature was meeting or about to meet. Although warned that a parade permit would be needed, none was applied for. The march was principally upon the sidewalks and appears to have been orderly, at least until it was stopped. About one block from the Capitol Building the police halted the group and informed those persons at the head of the line that because they had no permit the marchers would have to disperse or be arrested. Steadfastly refusing to disperse, a large number of the marchers were arrested. From this episode, and similar ones which followed, came this litigation.

It is of interest that during the three year period immediately preceding this attempted parade without a permit there had been 13 parade permit applications filed in the City of Jackson and none had been denied. Almost half of those granted were for Negroes and/or civil rights demonstrations.

this Article shall, upon conviction, be guilty of a misdemeanor, and shall be punishable by fine of not less than $75.-00 nor more than $100.00, or by imprisonment in the city jail for not more than thirty days, or by both such fine and imprisonment."

2. The first section of the Ordinance read as follows:
"That it shall be unlawful for any person, or persons, to conduct or participate in any parade or marching on the side-

walks or streets of the City of Clarksdale, Mississippi, or to move or stand on said sidewalks or streets, carrying banners, placards, signs or the like, or to sit or lie on the sidewalks or streets or curbs of said City, or for any person, or persons, to engage in shouting, singing, orating, public speaking, or any other distracting activities of any kind on any of the sidewalks or streets of the City of Clarksdale, Mississippi, without the written permission of the Chief of Police of said City."

In any event, the litigation necessitates a determination of whether § 135 as presently written is unconstitutionally void on its face.

In approaching the problem we keep several indisputable principles well in mind.

■■ First, it is our duty, if possible, to construe the Ordinance so as to avoid the conclusion of unconstitutionality. We are not to assume that in passing it the City Council intended to or did grant unto itself the right in its sole discretion to violate or disregard any rights or liberties guaranteed by the Constitution. If such had been done we would have to look no further than the decision of the Mississippi Supreme Court in King v. Clarksdale, supra.

■ Second, as far back as 1940 the Supreme Court of Mississippi has held that where a power is granted to a public board to be exercised at "its discretion", the grant means a legal and not an arbitrary discretion, Board of Mississippi Levee Commissioners v. Kellner, 189 Miss. 232, 196 So. 779. This was the rationale, supported by a specific decision of the Supreme Court of New Hampshire, on which the decision turned in Cox v. State of New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049, 133 A.L.R. 1396 (1941), as well as the approach taken in Poulos v. State of New Hampshire, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105, 30 A.L.R.2d 987 (1953).

■ Lastly, no Federal Court has the authority to interfere with any municipality in the promulgation and lawful enforcement of reasonable regulations for maintaining the safety and convenience of all citizens in the orderly use of its public streets and sidewalks, so long as those regulations comply with Constitutional standards. We have in mind the language of Cox v. The State of New Hampshire, supra:

"If a municipality has authority to control the use of its public streets for

parades or processions, as it undoubtedly has, it cannot be denied authority to give consideration, without unfair discrimination, to time, place and manner in relation to the other proper uses of the streets".

See also Poulos v. State of New Hampshire, supra, Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); Schneider v. State of New Jersey Town of Irvington, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); Cox v. State of Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965).

Thus our sole concern in this case is and can only be whether § 135 in any material particular violates or fails on its face to comply with Constitutional standards.

In Cox v. State of New Hampshire, supra, the Supreme Court phrased it this way:

"* * * the question in a particular case is whether that control is exerted so as not to deny or unwarrantedly abridge the right of assembly and the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places [citations omitted]."

The question may more specifically be stated as follows:

Is § 135 so vaguely and broadly written that it purports to or may be construed to, prohibit conduct, and punish offenders for conduct, which is protected by First Amendment Rights of the United States Constitution?

The latest guidance may be found in Ashton v. Kentucky, 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469 (May 16, 1966) wherein it was said:

"Here as in the cases discussed above [3] we deal with First Amendment rights. Vague laws in any area suffer a constitutional infirmity. When First Amendment rights are in-

3. The opinion cited and discussed:
    Cantwell v. Connecticut, supra; Terminiello v. City of Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131; Edwards

v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697; and Cox v. State of Louisiana, supra.

volved, we look even more closely lest, under the guise of regulating conduct that if reachable by the police power, freedom of speech or of the press suffer. We said in Cantwell v. Connecticut, supra, that such a law must be 'narrowly drawn to prevent the supposed evil,' 310 U.S., at 307 [60 S.Ct., at 905, 84 L.Ed. 1213], and that a conviction for an utterance 'based on a common law concept of the most general and undefined nature,' id., at 308, [60 S.Ct. at 905] could not stand."

For example, in the *Terminiello* case, the City of Chicago had a city ordinance which read as follows:

"All persons who shall make, aid, countenance or assist in making any improper noise, riot, disturbance, breach of the peace, or diversion tending to a breach of the peace, within the limits of the city * * * shall be deemed guilty of disorderly conduct [with punishment prescribed upon conviction]."

The trial court instructed the jury that any misbehaviour which "stirs the public to anger, invites dispute, brings about a condition of unrest, or creates a disturbance" violated the ordinance. The Supreme Court held the ordinance invalid.

The Constitutional difficulty with § 135 most acutely appears in its prohibition against conducting or participating "in any parade or marching in which floats, banners, placards or other distracting agencies, noises, objects or vehicles are used; and for any person to engage in shouting, singing, orating, speaking, or any other distracting activity of any kind on any of the public streets and thoroughfares of the City of Jackson".

It is at once noted that the Ordinance prescribes no definitions or standards as to what constitutes "distracting activity", nor does it mention "shouting, singing, orating, speaking" in any but the broadest and most encompasssing terms—at least the unlimited language is wide open to such an interpretation on the part of enforcement officials.

Moreover, the only way to avoid the prohibition is to obtain "special permission for parades and other unusual activities on the streets, when [in the opinion of the City Council] such parades or other activities will not be distracting to the extent of disturbing the usual, normal, and customary use of the streets and would not constitute a disturbance to the people living or conducting businesses thereon". Obviously, this language is as vague, broad, and lacking in standards as that previously alluded to.

The undisputed proof in the record from a responsible police official is:

"That the City Council in arriving at its decision [as to granting permits] considered the following problems: Traffic control along the proposed parade or march route; the size and number, length, number of vehicles, etc. that would be in the parade; the number of police and police vehicles that would be needed or required to handle the proposed parade; the time element in connection with any such proposed parade in order that such parade would not interfere with the normal flow of traffic."

This witness testified that the only reason for requiring a permit was in order that traffic could be controlled and law and order maintained during the parade.

These are, of course, objects of legitimate municipal concern, which, as already pointed out, the City clearly has the authority to handle in a constitutional manner.

The difficulty is that these standards and considerations do not appear in the face of the Ordinance. Nor would their presence cure present defects if the Council continued to be left with the authority to deny permits so that the "activity will not be distracting and disturbing to the usual, normal and customary use of the streets and would not constitute a disturbance to the people living or conduct-

ing businesses thereon", as above set out.

Measured by the Supreme Court decisions herein alluded to, we find no escape from the view that § 135 as presently written is unconstitutional. It would be useless for this Court to say otherwise; indeed it would only delay the drafting and enactment of an ordinance which in a constitutional manner would protect legitimate regulation of the activities here involved.

In oral argument, we spent considerable time on the "apparent impossibility" of municipalities enacting ordinances in this field which will meet constitutional standards and escape invalidation at the hands of the courts. Careful consideration reveals that such is not impossible. We invited supplemental briefs on this very question, which were filed, and which are available for use in the drafting and enactment of a valid ordinance. We do not discuss the subject any further at this time because it is not the function of the Courts to offer opinions on anticipated events or future controversies.

This brings us to the question of injunctive relief. The proceedings below were on preliminary injunction only, so that, technically, there remains a prayer for permanent injunction. We would have considerable doubt that there is any further need for additional injunctive relief in view of the Orders called for in National Association for the Advancement of Colored People v. Thompson, supra. But we think this is a matter best to be left initially to the good judgment and discretion of the trial court, upon such showing as the parties may hereafter be able to make. If further relief is reasonably appropriate or required, there would, of course, be the necessity for the hearing of evidence on the permanent injunction. It would be far too soon for us at this time either to intimate or declare what the outcome would or should be.

The Judgment of the District Court, affirming the validity of § 135 of the Uniform Traffic Regulation Code of the City of Jackson, Mississippi, is reversed and remanded for further proceedings not inconsistent herewith.

Reversed and remanded.