**Don HAMER et al., Appellants,**

v.

**George MUSSELWHITE, Individually and as Chief of Police of the City of Lexington, Miss., et al., Appellees.**

**No. 23474.**

United States Court of Appeals
Fifth Circuit.

May 5, 1967.

Melvyn Zarr, New York City, Anthony G. Amsterdam, Philadelphia, Pa., Jack Greenberg, New York City, Henry M. Aronson, Carsie A. Hall, Jackson, Miss., James M. Nabrit, III, New York City, for appellants.

Peter M. Stockett, Jr., Asst. Atty. Gen., William A. Allain, Asst. Atty. Gen., Joe T. Patterson, Atty. Gen., of Mississippi, Jackson, Miss., Pat M. Barrett, Lexington, Miss., for appellees.

Before BELL and GODBOLD, Circuit Judges and NOEL, District Judge.

BELL, Circuit Judge.

Appellants, Negro residents of the City of Lexington, Holmes County, Mississippi, sought declaratory and injunctive relief against defendants, city officials and officials of Holmes County, Mississippi, contending that a 1961 city ordinance which prohibited parades without permission of the mayor and marshal of Lexington was unconstitutional. Their interest in parading was in connection with voter registration activity. The ordinance was thereafter repealed on the

advice of the city attorney that it was unconstitutional. See King v. City of Clarksdale, Miss. S.Ct., 1966, 186 So.2d 228; and cf. Strother v. Thompson, 5 Cir., 1967, 372 F.2d 654; Guyot v. Pierce, 5 Cir., 1967, 372 F.2d 658.

Appellants then amended their complaint to attack the constitutionality of an ordinance enacted in 1965 in the place and stead of the repealed ordinance. The new ordinance prohibited parades altogether on Yazoo Street, Depot Street, Carrollton Street, and Court Square (the streets surrounding the courthouse square), in the City of Lexington.[1] It was in fact the same as an ordinance which had been adopted in 1955 and repealed in 1961 when the discretionary ordinance was adopted. The allowance of parades in the discretion of the city officials was to accommodate requests for high school football parades and a merchants Christmas parade.

The theory of the amended complaint was that the streets in question were the main thoroughfares of the city and constituted the area in the city where the expression of views through peaceful parades, demonstrations and assemblies were likely to come to the attention of the residents and public officials of the city. They contended that the ordinance was thus an impermissible restriction of their freedom of speech and assembly and in violation of their First Amendment rights. Cf. Kelly v. Page, 5 Cir., 1964, 335 F.2d 114, 118, 119, on the right to assemble and petition for redress of grievances in a somewhat similar setting.

After an evidentiary hearing, the District Court denied relief, concluding that the 1961 ordinance was not unconstitutional. We affirm.

The facts developed on the hearing disclosed that Lexington is a city of slightly less than 3,000 inhabitants. The block or square on which the state courthouse is situated is the center of the business district. The street surrounding this block is known as Court Square. Four principal streets enter Court Square; Yazoo from the south, Depot from the east, Carrollton from the north, and Spring from the west. Traffic from several of the local streets and from the two state highways which pass through Lexington converges on the courthouse block. State Highway No. 17, which enters the city from the south as Yazoo Street, and State Highway No. 12, connecting the area with U. S. Highways Nos. 49, 51 and Interstate 55, which enters from the east as Depot Street, intersect at the square and continue north as Carrollton Street. There was undisputed evidence of a severe traffic problem in the immediate area of the business district.

It was also undisputed that the city construed the ordinance as appying only to streets, and its application had been limited to the named streets as distinguished from the sidewalks or shoulders of the streets where there were no sidewalks. This application was evidenced by the one parade which had taken place after the adoption of the ordinance. It was organized by appellants. It proceeded on the shoulders and sidewalks of Yazoo Street to the courthouse. This parade involved some 500 Negro citizens and it was held on the day following the adoption of the ordinance. They marched two abreast in a column some three or four blocks long to the courthouse where they assembled on the lawn for singing and praying. They returned by the same route and the police officials of the city assisted them by controlling traffic during the course of the parade. This parade and the program at the courthouse lasted for four hours.

Appellants contend that the ordinance is unconstitutional on its face as being vague and overbroad, and also in application. This position assumes that the prohibition of the ordinance runs to the sidewalks and shoulders and prevents crossing courthouse square. The twofold effect of such a construction or in-

1. Section I. That parades on Yazoo Street, Depot Street, Carrollton Street and Court Square in the City of Lexington, Mississippi are hereby prohibited and are hereby ordained to be unlawful.

terpretation is to show undue restriction if no marches whatever are allowed, or unfettered discretion in the city officials if they allow the sidewalks and shoulders to be used in their discretion.

This means the complaint narrows to a determination of whether appellants have the right to parade or march on the sidewalks and shoulders and to cross the street adjacent to the courthouse (Court Square), so as to reach the courthouse. The defendants reiterate their position that the ordinance was not intended to include sidewalks and shoulders or to prevent pedestrian crossing of Court Square in a march to reach the courthouse. They point to their conduct in allowing, and indeed, in assisting appellants with the prior parade to demonstrate this as the fact. Appellants contend, however, that they are in doubt as to the meaning of the ordinance in these respects and that the doubt has chilled their promotional activities.

■ We hold that the ordinance applies only to the named streets; that it does not prohibit parades or marches on the sidewalks or shoulders of the streets, and that it does not prevent a crossing of courthouse square to reach the courthouse. This is what the city officials say that the ordinance means; this is the application that has been given to it; and it does not provide otherwise.

■ This case presents First Amendment rights and a traffic problem. The ordinance regulates traffic and, at the same time, accommodates First Amendment rights by leaving ample room for marches to the downtown area, including the courthouse, for the purposes of demonstrating and petitioning for redress of grievances. Nothing more is involved than the traditional balancing situation between the rights of a municipality to control its streets to the extent of maintaining order for the convenience of all and First Amendment rights. The principle is well established that municipal authorities have the right to keep their streets open and available for movement of people and property provided the concomitant right of the people to free speech and assembly is not unduly restricted.

■ A recent statement of this principle is found in Cox v. State of Louisiana, 1965, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471. Although inapposite because the statute there which prohibited obstruction of public passages had been applied to some and not to others with respect to street assemblies and parades, all in the discretion of the Baton Rouge authorities, it nevertheless states the principle which is applicable here. The following language from the *Cox* case is pertinent:

"* * * The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. The control of travel on the streets is a clear example of governmental responsibility to insure this necessary order. A restriction in that relation, designed to promote the public convenience in the interest of all, and not susceptible to abuses of discriminatory application, cannot be disregarded by the attempted exercise of some civil right which, in other circumstances, would be entitled to protection. * * * Governmental authorities have the duty and responsibility to keep their streets open and available for movement. A group of demonstrators could not insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations. * * *"

379 U.S. at pp. 554, 555, 85 S.Ct. at p. 464.

■ Appellants do not disagree with this principle. Rather they proceed on the theory that the city has not drawn

482

the necessary balance; the ordinance is either an outright ban of their rights, or a licensing system administered in a discretionary manner without proper standards. To the contrary, our view is that the ordinance is clear and there has been no inconsistent application of it. It forbids parades on the named streets. It does not forbid parades or marches on the sidewalks and shoulders of the streets where there are no sidewalks. It does not proscribe the crossing of the courthouse square. This has been the application given to it and the only application. We hold that the ordinance is not unconstitutional on its face or as applied. It accommodates the rights of the public in the context of traffic and also accords appellants their right of free speech and assembly.

Affirmed.