**Hall DAVIS et al., Appellants,**

v.

**John G. FRANCOIS et al., Appellees.**

**No. 25562.**

United States Court of Appeals
Fifth Circuit.

May 28, 1968.

Murphy W. Bell, Baton Rouge, La., Jack Greenberg, Charles Stephan Ralston, Charles Jones, New York City, Lolis E. Elie, New Orleans, La., Melvyn Zarr, New York City, Collins, Douglas & Elie, New Orleans, La., for appellants.

Jack P. F. Gremillion, Atty. Gen., Thomas W. McFerrin, Asst. Atty. Gen., Kenneth C. DeJean, Spec. Counsel to Atty. Gen., Jack E. Yelverton, Asst. Atty. Gen., Baton Rouge, La., for appellees.

Before THORNBERRY, AINSWORTH and DYER, Circuit Judges.

THORNBERRY, Circuit Judge:

This appeal is from an order dismissing appellants' suit for declaratory and injunctive relief against the picketing ordinance of Port Allen, Louisiana as violative of the first and fourteenth amendments of the United States Constitution.

Appellants engaged in picketing of the School Board Building in Port Allen to protest the "racist policies of the Board." While these protests were going on, the

city authorities passed an ordinance limiting the right to picket as follows:

## Section I.

It shall be unlawful for more than two (2) people to picket on private property or on the streets and sidewalks of the City of Port Allen in front of a residence, a place of business, or public building. Said two (2) pickets must stay five (5) feet apart at all times and not obstruct the entrance of any residence, place of business, or public building by individuals or by automobiles.

## Section II.

Any person who violates the provisions of this ordinance shall be subject to a fine not exceeding $100.00 or imprisonment for a period not to exceed 30 days, or both. (R. 4)

Pursuant to this ordinance appellants were arrested as they engaged in a peaceful picket of the School Board Building. They filed a petition for removal and the present action simultaneously. In the instant action they asked the district court to enter a declaratory judgment and temporary restraining order and preliminary and permanent injunction against any enforcement of the ordinance and specifically against the arrest or prosecution of appellants or members of their class pursuant to the ordinance. Although appellants alleged that the ordinance had a "chilling effect" on first-amendment rights, the district court invoked the doctrine of abstention, remarking, however, that the ordinance was "not unconstitutional on its face." We reverse and remand.

## I.

■ The recent Supreme Court decision, Zwickler v. Koota, 1967, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444, confirms that the district court erred in applying the doctrine of abstention.[1] There a state anti-handbill statute was challenged as being void for "overbreadth" and therefore violative of the first-amendment right of free speech. The lower court applied the doctrine of abstention but the Supreme Court reversed and remanded. The Court emphasized the special duty of federal courts to vindicate federal rights, especially when the challenge is that a statute on its face is repugnant to the first amendment. Id., 88 S.Ct. at 395. The Court squarely held that the abstention doctrine is inappropriate for cases in which the statute is justifiably attacked on its face for an "overbreadth" that abridges free expression. Id., 88 S.Ct. at 396, 399.

## II.

■■ The next consideration is the action to[2] be required of the district court on remand. Recent decisions of this Circuit reflect the pervasiveness of demonstrations and protests in our society today. See Strother v. Thompson, 5th Cir. 1967, 372 F.2d 654; Guyot v. Pierce, 5th Cir. 1967, 372 F.2d 658; Hamer v. Musselwhite, 5th Cir. 1967, 376 F.2d 479; N.A.A.C.P. v. Thompson, 5th Cir. 1966, 357 F.2d 831; Wooten v. Ohler, 5th Cir. 1962, 303 F.2d 759. The issues posed by these movements are controversial and demand that courts strike an accommodation between liberty and order by reconciling the interest of allowing free expression of ideas in public places with the protection of the public peace and use of public facilities by others. See Niemotko v. State of Maryland, 1951, 340 U.S. 268, 71 S.Ct. 325, 95 L.Ed. 267, 269; Thomas v. Collins, 1945, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430.

■■ In adjusting these equally viable values, it is important to keep certain principles in mind. Although it is true

---

1. It should be noted, however, that Zwickler was handed down after the district court's ruling in this case.

2. The constitutionality of the city ordinance is to be determined by a single district judge and is not a three-judge court matter. Moody v. Flowers, 1967, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643.

that the right to picket and protest has undergone much development since Thornhill v. State of Alabama, 1940, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093, there is no doubt that the protection of the first amendment is not limited to "pure speech," but extends instead to the peaceful expression of views by marchers, demonstrations or assemblies.[3] These "public issue" demonstrations are important to the individual, Kalvan, The Concept of the Public Forum: Cox v. State of Louisiana, 1065 Sup.Ct.Rev. 1, because in an open society there must be the ability to advocate views in the hope of changing existing preconceptions or convictions. See Terminiello v. City of Chicago, 1949, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131; Thornhill v. State

of Alabama, supra. This need has fostered the accompanying doctrine that the individual must be afforded an appropriate "public forum" for his peaceful protests.[4] See Guyot v. Pierce, supra, 372 F.2d at 661.

However laudatory, protests have often created problems for officials and have prompted the development of certain state interests that may be invoked to regulate them. These interests are the prevention of riots, disorder, interference with traffic, blockage of sidewalks or entrances to buildings, and disruption of the normal functions of the public facility. See Strother v. Thompson, supra; Guyot v. Pierce, supra; Kelly v. Page, 5 Cir. 1964, 335 F.2d 114.[5] In Cox v. State of Louisiana,

---

3. See Brown v. State o f Louisiana, 1966, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637; Cox v. State of Louisiana, 1965, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471; Edwards v. South Carolina, 1963, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697; Kovacs v. Cooper, 1949, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513; Cox v. State of New Hampshire, 1941, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049; Strother v. Thompson, supra; Hurwitt v. City of Oakland, N.D.Calif.1965, 247 F.Supp. 955; King v. City of Clarksdale, 186 So. 2d 228 (Sup.Ct.Miss.1966). For other examples of protested conduct that is not merely a verbal expression see West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L. Ed. 1628; Stromberg v. People of State of California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117.

4. This. development is seen in the rejection of the holding in Davis v. Commonwealth of Massachusetts, 1897, 167 U.S. 43, 17 S.Ct. 731, 42 L.Ed. 71, that the city had the absolute right to forbid the use of public streets for protests. Subsequent decisions indicate that streets, parks, and sidewalks may be appropriate forums for demonstrations if conducted in an orderly way and without blockage of movement and access to facilities. See Poulos v. State of New Hampshire, 1953, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105; Kunz v. People of the State of New York, 1950, 340 U.S. 290, 71 S.Ct. 312, 95 L. Ed. 280; Niemotko v. State of Maryland, supra; and Kovacs v. Cooper, supra. The general statement of this right is found in Hague v. C. I. O., 1939, 307 U.S.

496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423:

Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from. ancient times, been a part of the privileges, immunities, rights, and liberties of citizens. The privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied.

This forum is often provided by public buildings. See Brown v. State of Louisiana, 1966, 383 U.S. 131, 148, 86 S.Ct. 719, 15 L.Ed.2d 637 (public library); Terminiello v. City of Chicago, supra (auditorium); Thomas v. Collins, supra (city hall).

5. Municipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for movement of people and property, the primary purpose to which the streets are dedicated. So long as legislation to this end does not abridge the constitutional liberty of one rightfully upon the street to impart information through speech or the distribution of literature, it may lawfully regulate the conduct of those using

supra, the Supreme Court incorporated these competing interests into several policy statements:

The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. * * * A group of demonstrators could not insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations. 379 U.S., at 554–555, 85 S.Ct., at 464.

* * * * * *

The conduct which is the subject of this statute—picketing and parading—is subject to regulation even though intertwined with expression and association. The examples are many of the application by this Court of the principle that certain forms of conduct mixed with speech may be regulated or prohibited. Id., at 563, 85 S.Ct., at 480.

* * * * * *

We emphatically reject the notion urged by appellant that the First and Fourteenth Amendments afford the same kind of freedom to those who would communicate ideas by conduct such as patrolling, marching, and picketing on streets and highways, as these amendments afford to those who communicate ideas by pure speech. Id., at 555; 85 S.Ct. at 464.

Accordingly, although peaceful, orderly demonstrations cannot be restricted simply because they create disturbances, it is clear that the time, place, and manner of the demonstrations are subject to reasonable regulations. See Strother v. Thompson, supra, 372 F.2d at 657; Guyot v. Pierce, supra, 372 F.2d at 659; Note, Regulation of Demonstrations, 80 Harv.L.Rev. 1773, 1774 (1967).

It should be evident from this discussion that the question presented by the Port Allen ordinance is not whether the city has the power to regulate demonstrations but whether the means chosen to achieve a legitimate end are so sweeping that fundamental personal liberties are stifled. In the free-speech cases this issue emerges through the challenge, as here, that the statute on its face is void for overbreadth, "that is, that it offends the constitutional principle that 'a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.'" Zwickler v. Koota, supra, 88 S.Ct. at 396. This Circuit has approached this problem by asking whether the state control "is exerted so as not to deny or unwarrantedly abridge the right of assembly and the opportunities for the communication of thought and the discussion of public questions immemorially associated with the resort to public places." Guyot v. Pierce, supra 372 F.2d at 661. We have also said that "these rights to picket and to march and to assemble are not to be abridged by arrest or other interferences so long as asserted within the limits of not unreasonably interfering with the

the streets. For example, a person could not exercise this liberty by taking his stand in the middle of a crowded street, contrary to traffic regulations, and maintain his position to the stoppage of all traffic; a group of distributors could not insist upon a constitutional right to form a cordon across the street and to allow no pedestrian to pass who did not accept a tendered leaflet; nor does the guarantee of freedom of speech or of the press de-

prive a municipality of power to enact regulations against throwing literature broadcast in the streets. Prohibition of such conduct would not abridge the constitutional liberty since such activity bears no necessary relationship to the freedom to speak, write, print or distribute information or opinion.
Schneider v. State of New Jersey, 1939, 308 U.S. 147, 160, 60 S.Ct. 146, 150, 84 L.Ed. 155.

right of others to use the sidewalks and streets, to have access to store entrances, and where conducted in such a manner as not to deprive the public of police and fire protection." See Kelly v. Page, supra, 335 F.2d at 119.

■ The present ordinance patently violates these precepts. Its application is sweeping: It restricts "public issue picketing" and private picketing;[6] it restricts picketing on both the sidewalks and streets; it extends to all kinds of facilities in the city though each may present different considerations; it absolutely limits the number of picketers to two regardless of the time, place or circumstances. In so doing it "unduly restricts the right to protest"[7] because it does not aim specifically at a serious encroachment on a state interest or evince any attempt to balance the individual's right to effective communication and the state's interest in peace and harmony. See Thornhill v. Alabama, supra; Carlson v. People of State of California, 1940, 310 U.S. 106, 60 S.Ct. 746, 84 L.Ed. 1104. Thus, this ordinance is not the narrowly drawn regulation that properly restricts the time, place, or manner of the protests. Indeed, it considers only the number of demonstrators and gives no relevance to other factors. Limiting the number to two persons, regardless of the time, place and circumstances, is especially restrictive when coupled with the fact that the ordinance covers all kinds of buildings. It takes little imagination to see that two picketers before some buildings would be useless. Since the right to freedom of speech contemplates effective communication, this statute denies demonstrators many meaningful methods of expression. See Saia v. People of State of New York, 1948, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574. Moreover, the statute confines the number of protesters to two at any building without indicating that any more would necessarily cause riots, block the streets, sidewalks, or entrances to the buildings. These limitations are unreasonable because there is no legitimate state interest demanding that there never be more than two persons picketing or demonstrating at any of these places.[8] Consequently, in attaining a permissible end, the city has exercised its power in a way that unduly infringes on protected freedom[9] by allowing punishment for the fair exercise of first-amendment rights. See Edwards v. South Carolina, supra. Thus, under the guise of regulating conduct reachable by the police power, it has

6. By failing to distinguish "public issue" pickets from private pickets the ordinance creates numerous problems. Private pickets are usually concerned with labor disputes. It would appear that the statute might reach even these since private residences and places of business are within its ambit. The decisions suggest that private pickets are exercises of economic power and create many issues not caused by the "public issue" demonstration. See International Brotherhood, etc. v. Vogt, Inc., 1957, 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347; Hughes v. Superior Court, 1949, 339 U.S. 460, 70 S.Ct. 718, 94 L. Ed. 985.

7. Williams v. Wallace, M.D.Ala.1965, 240 F.Supp. 100. See also Hamer v. Musselwhite, 5th Cir. 1967, 376 F.2d 479, 481.

8. See N. A. A. C. P. v. Thompson, 5th Cir. 1966, 357 F.2d 831; Baines v. City of Danville, 4th Cir. 1964, 337 F.2d 579; Pritchard v. Downie, 8th Cir. 1964, 326 F.2d 323; Turner v. Goolsey, S.D.Ga. 1966, 255 F.Supp. 724; Cottonreader v. Johnson, M.D.Ala.1966, 252 F.Supp. 492; United States v. Clark, S.D.Ala.1965, 249 F.Supp. 720.

One decision indicates that group association is needed not only for effectiveness but also for protection of the members. Indeed, it asserts that "the extent of the right to assemble, demonstrate and march peaceably along the highway and streets in an orderly manner should be commensurate with the enormity of the wrongs that are being protested and petitioned against." Williams v. Wallace, M.D.Ala.1965, 240 F.Supp. 100, 106.

9. Shelton v. Tucker, 1960, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231. This decision holds that the state must use the least drastic means for achieving the same permissible end. See also Keyishian v. Board of Regents, 1967, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629.

permitted punishment for the expression of unpopular views. See Thornhill v. State of Alabama, supra; Guyot v. Pierce, supra at 662; Cottonreader v. Johnson, M.D.Ala.1966, 252 F.Supp. 492, 497.

 We emphasize again that our holding does not mean the city is powerless to regulate demonstrations. It must simply identify a substantial interest worthy of protection. Note, Regulation of Demonstrations, 80 Harv.L.Rev. 1773 (1967). The decisions indicate that this process has been accomplished in at least two ways. First, the state by a narrowly drawn statute may regulate the time, place and manner of the demonstrations. Unless the building is a sensitive facility that may be made totally off limits to public debate,[10] the right to demonstrate on public property should only be regulated by statutes that consider all of the nuances of the time, place and manner.[11] Second, it is clear that the state may enact an ordinance that carves out of the demonstration the evil it seeks to prohibit and thereby isolates conduct that does not have first-amendment protection. The recent case of Cameron v. Johnson, 1968, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182, is illustrative. There the Supreme Court upheld an ordinance that forbade demonstrators from obstructing or unreasonably interfering with the free ingress and egress to and from several kinds of public buildings. The Court held that the statute was not unconstitutional on its face for overbreadth:

> But "picketing and parading [are] subject to regulation even though intertwined with expression and association," Cox v. State of Louisiana, 379 U.S. 559, 563, 85 S.Ct. 453, 480, and this statute does not prohibit picketing so intertwined unless engaged in a manner which obstructs or unreasonably interferes with ingress or egress to or from the courthouse. Prohibition of conduct which has this effect does not abridge constitutional liberty "since such activity bears no necessary relationship to the freedom to * * * distribute information or opinion." Schneider v. State of New Jersey, 308 U.S. 147, 161, 50 S.Ct. 146. The statute is therefore a "valid law dealing with conduct subject to regulation so as to vindicate important interests of society and * * * the fact that free speech is intermingled with such conduct does not bring it within constitutional protection." Cox v. State of Louisiana, supra, 379 U.S. at 564, 85 S.Ct. 453, 481.

The Port Allen ordinance makes no such isolation of a legitimate governmental interest.[12]

Only by requiring these narrowly drawn and precise enactments that aim at specific conduct can courts produce a reasonable reconciliation of the minority's right to protest, and the majority's right to peace and order. United States

---

10. See Adderley v. State of Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (jailhouse); Cox v. State of Louisiana, 1965, 379 U.S. 536, 85 S.Ct. 453, 13 L. Ed.2d 471 (courthouse); Note, Right to Demonstrate on Public Property, 81 Harv.L.Rev. 138 (1967).

11. Some of these factors would be the number of protesters, the building picketed, the hour of the demonstration, the manner in which they marched, the blockage of traffic or sidewalks, and the chance of violence. See Chase v. McCain, W.D. Va.1963, 220 F.Supp. 407.

12. See N. A. A. C. P. v. Thompson, 5th Cir. 1966, 357 F.2d 831 (cannot obstruct traffic or block sidewalks); Baines v. City of Danville, 4th Cir. 1964, 337 F.2d 579 (could protest fact of segregated theaters but could not exclude others from use or have massive occupancy of the approaches); Pritchard v. Downie, 8th Cir. 1964, 326 F.2d 323 (cannot have riotous conduct); United States v. Aarons, 2d Cir. 1962, 310 F.2d 341 (cannot block launching of vessel); Hurwitt v. City of Oakland, N.D.Calif.1965, 247 F.Supp. 995 (a group of demonstrators could not insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations).

v. Aarons, 2d Cir.1962, 310 F.2d 341, 345. Since first-amendment rights are the essence of any free society, there can be no doubt that courts are justified in seeking this accommodation of liberty within the public order.

These [First Amendment] rights may be abused by using speech or press or assembly in order to incite to violence and crime. The people through their Legislatures may protect themselves against that abuse. But the legislative intervention can find constitutional justification only by dealing with the abuse. The rights themselves must not be curtailed. The greater the importance of safeguarding the community from incitements to the overthrow of our institutions by force and violence, the more imperative is the need to preserve inviolate the constitutional rights of free speech, free press and free assembly in order to maintain the opportunity for free political discussion, to the end that government may be responsive to the will of the people and that changes, if desired, may be obtained by peaceful means. Therein lies the security of the Republic, the very foundation of constitutional government.

De Jonge v. State of Oregon, 1931, 299 U.S. 353, 364, 57 S.Ct. 255, 260, 81 L.Ed. 278, 279.

It is the disregard of these tenets that renders the ordinance patently unconstitutional on its face. Therefore, we reverse and remand to the district court with directions to enter a declaratory judgment that the Port Allen picketing ordinance is unconstitutional. The propriety and necessity of injunctive relief can be decided by the district court in the first instance, if, as is unlikely, the City chooses to ignore the decision of this Court voiding the statute on which the prosecutions are based.[13]

Reversed and remanded.

13. In reaching this decision we do not have to consider whether the ordinance has been applied in bad faith for the sole purpose of discouraging and interfering with free-speech activities. Compare Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22, with Cameron v. Johnson, 390 U.S. 611, 88 S. Ct. 1335 (1968). Nor must we decide whether 28 U.S.C. § 2283 bars a federal injunction against pending prosecutions. In *Cameron* the Supreme Court declined to express any view on this question. See Cameron v. Johnson, S.D.Miss.1966, 262 F.Supp. 873, 874.