BARKETT, Circuit Judge,
concurring:
I concur with the opinion because I agree' with the Court’s holding that the Ordinance in question (“ § 3-4-11”) is content-based. I write only to add my view that the Ordinance would fail to pass constitutional muster even if it were not content-based.
An ordinance requiring a permit “before authorizing public speaking, parades, or assemblies” in a traditional public forum bears a “heavy presumption against” it as a prior restraint. Forsyth County, Ga. v. Nationalist Movement, 505 U.S. 123, 130, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992) (internal citations omitted). To survive constitutional scrutiny, it: “may not delegate overly broad licensing discretion to a government official”; “must not be based on the content of the message”; “must be narrowly tailored to serve a significant governmental interest”; and “must leave open ample alternatives for communication.” Id. In addition to Judge Anderson’s content-based analysis, I believe that § 3-4-11 independently fails each of these other prerequisites to constitutionality as well. I focus my comments on the Ordinance’s over-broad delegation *1258 of licensing discretion and its utter lack of narrow tailoring.
The Ordinance vests the Sheriff with the power to deny a permit “in whole or in part for any reason if the Sheriff determines that the plan submitted by the applicant will raise public safety concerns to those participating in the event or to the public ...” (emphasis added).[1] I believe this is an unconstitutional grant of unbridled discretion. See, e.g., Shuttlesworth v. City of Birmingham, 394 U.S. 147, 150-51, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (“a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional”); Lady J. Lingerie, Inc. v. City of Jacksonville, 176 F.3d 1358, 1362 (1999) (“virtually any amount of discretion beyond the merely ministerial is suspect”).
Although the Ordinance superficially limits the Sheriffs determination to public safety considerations, the criteria the Sheriff may consider is vague, undefined and completely subjective. It permits the Sheriff to deny a permit for “any reason” if the Sheriff is satisfied that it will only “raise” public safety concerns. “It can thus ... be made the instrument of arbitrary suppression of free expression of views.” Hague v. Committee of Industrial Organization, 307 U.S. 496, 516, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (striking down statute that “enable[d] the Director of Safety to refuse a permit on his mere opinion that such refusal will prevent ‘riots, disturbances or disorderly assemblage’ ”); see also Lady J. Lingerie, Inc., 176 F.3d at 1362 (1999) (noting that even a “seemingly-innocuous fire safety provision” presented too great of a danger that the ordinance would be used to “covertly discriminate” against protected expression).
Unlike the dissent, I believe that Thomas v. Chicago, 534 U.S. 316, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002) is inapposite to this case. The ordinance in Thomas sets out thirteen “narrowly drawn, reasonable and definite standards” for the denial of a use-permit for large-groups of over 50 people in busy Chicago parks. Id. at 324, 122 S.Ct. 775. In contrast, Ordinance § 3-4-11 allows the Sheriff to deny a permit to groups l/10th the size of those regulated in Thomas, in virtually all public places, for “any reason” that in his own mind raises public safety concerns. Unlike the Thomas ordinance, which requires a finding that the intended use or activity “would present an unreasonable danger to ... health or safety,” id. at 318 n. 1 (emphasis added), Ordinance § 3-4-11 allows the Sheriff to deny a permit merely because he believes, whether reasonably or not, that the activity might “raise public safety concerns to those participating in the event or to the public.” Thus, besides impermissibly granting the Sheriff the power to deny the permit based on his “mere opinion,” Hague, 307 U.S. at 516, 59 S.Ct. 954, the Ordinance impermissibly grants the Sheriff the authority to enforce a “heckler’s veto.” See e.g., Forsyth County v. Nationalist Movement, 505 U.S. 123, 134-35, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992); see also Church of American Knights of Ku Klux Klan (CAKKKK) v. Gary, 334 F.3d 676, 680-81 (7th Cir.2003) (It is well-established “that a permit for a parade or other assembly having political overtones cannot be denied because the applicant’s audience will riot. To allow denial on such a ground *1259 would be to authorize a ‘heckler's veto.’ ” (internal citations omitted)).
Furthermore, the rationales that might justify granting a government official limited discretion in issuing permits for large-groups in a public park simply do not extend to granting the same (or in this case more) discretion in deciding to issue a permit to five people in all public areas. As Judge Posner, the author of the Seventh Circuit’s decision that was affirmed by the Supreme Court in Thomas, has recently made clear in distinguishing Thomas, “[t]he use of parks for demonstrations involves ... complexities not involved in street rallies.” CAKKKK v. Gary, 334 F.3d at 683. He also noted that in Thomas the parks “were being overwhelmed by thousands of applications.” Id. Thus, the grant of some limited discretion in that case was fueled by the need to expeditiously process a large volume of applications for the purpose of coordinating various types of activities in a limited amount of space. That is not the case here.
Furthermore, contrary to the dissent’s suggestion, after-the-fact judicial review does not remedy this over-broad grant of discretion. See City of Lakewood, 486 U.S. at 771, 108 S.Ct. 2138 (“[e]ven if judicial review were relatively speedy, such review cannot substitute for concrete standards to guide the decision-maker’s discretion.”); Cantwell, 310 U.S. at 306, 60 S.Ct. 900 (“[T]he availability of a judicial remedy for abuses in the system of licensing still leaves that system one of previous restraint which, in the field of free speech and press, we have held inadmissible. A statute authorizing previous restraint upon the exercise of the guaranteed freedom by judicial decision after trial is as obnoxious to the Constitution as one providing for like restraint by administrative action.”).
The Ordinance also is not narrowly tailored. While the County has a substantial interest in protecting public safety and the free flow of traffic, this Ordinance utterly fails to achieve the “appropriate balance between the affected speech and the governmental interests that the ordinance purports to serve.” Watchtower Bible and Tract Society of New York, Inc. v. Village of Stratton, 536 U.S. 150, 165, 122 S.Ct. 2080, 153 L.Ed.2d 205 (2002). The scope of the ordinance is sweeping — requiring that any group of only five or more people who wish to exhibit “[a]ny expression of support for, or protest of, any person, issue, political or other cause or action” on “any sidewalk, street, public right of way or other public property” first obtain government approval before engaging in protected speech (emphasis added). The Ordinance is overly broad in at least two crucial respects. First, it applies to small intimate groups that do not create a legitimate threat to the County’s interests. See Majority Opinion at 1255, n.13. Second, it requires a permit in virtually all public places. See Hill, 530 U.S. at 728, 120 S.Ct. 2480 (“[W]e must, of course, take account of the place to which the regulations apply in determining whether these restrictions burden more speech than necessary.”); see also Davis v. Francois, 395 F.2d 730, 736 (5th Cir.l968)(striking down ordinance in part because it “restricts picketing on both the sidewalks and streets; it extends to all kinds of facilities in the city though each may present different considerations”).
The substantial interest the County has in protecting public safety and ensuring the free flow of traffic are simply not advanced by the breadth of this permit requirement, which applies to every group of five people standing in a park, sidewalk, or countless other public places, who wish to support a political candidate, a local ordinance, or perhaps even a soldier coming home from war. “It is offensive — not only to the values protected by the First Amendment, but to the very notion of a *1260 free society — that in the context of everyday public discourse a citizen must first inform the government of her desire to speak to her neighbors and then obtain a permit to do so.” Watchtower Bible, 536 U.S. at 165-66, 122 S.Ct. 2080. “Consequently, in attaining a permissible end, the [County] has exercised its power in a way that unduly infringes on protected freedom.” Davis, 395 F.2d at 736.

. The Ordinance also permits the Sheriff to refuse a permit if the proposed plan "would unduly restrict and/or congest traffic (motor vehicle or pedestrian) on any of the public roads, right of ways or sidewalks in the immediate vicinity of such event” and if it "would lead to an unreasonable disturbance of the peace in the area at the time of the proposed event”.