Garland STROTHER and Ernestine Holt
for her minor daughter, Jimmye
Blalock, Appellants,

v.

Allen C. THOMPSON et al., Appellees.

No. 23033.

United States Court of Appeals
Fifth Circuit.

Feb. 14, 1967.

Anthony G. Amsterdam, Philadelphia, Pa., Alvin J. Bronstein, R. Jess Brown, John H. Doyle, III, Jackson, Miss., Michael J. Silverberg, New York City, John O. Honnold, Jr., Philadelphia, Pa., Jack Greenberg, Melvyn Zarr, New York City, for appellants.

Thomas H. Watkins, E. W. Stennett, J. A. Travis, Jr., Elizabeth W. Grayson, Jackson, Miss., for appellees.

Before BROWN and COLEMAN, Circuit Judges, and DAWKINS, District Judge.

COLEMAN, Circuit Judge:

The appeal in this case squarely raises a single issue: Is an Ordinance of the City of Jackson, Mississippi,[1] enacted June 25, 1940, requiring the issuance of a permit for the distribution of handbills and like objects, void on its face as in violation of the First and Fourteenth Amendments to the United States Constitution?

[1]. "An Ordinance requiring the issuance of a permit for the distribution of handbills, posters, dodgers, paper cups, and other like objects within the City of Jackson, Mississippi.

"Whereas, the Council of the City of Jackson has determined from past experience that the distribution of handbills, posters, dodgers, paper cups, and like objects, on the streets, sidewalks and public places of the City of Jackson does cause the streets and sidewalks to be littered and unsightly, and does cause the sewer mains and culverts to become clogged and unsanitary, thereby creating an unsanitary condition which is detrimental to the good health of the Community, and

"Whereas, a large part of the handbills, posters, dodgers, paper cups, etc., distributed on the streets are immediately thrown upon the streets, thereby rendering them unsafe to the traveling public and causing a public nuisance on the streets, and

"Whereas, the dumping by the public distribution on the streets of said handbills, posters, dodgers, paper cups, etc. would create civil liability on the City of Jackson, Now Therefore:

"Be it ordained by the Council of the City of Jackson, Mississippi:

"Section 1. That for the protection of the public health, social welfare, public liability, and the protection of the public in general, it shall be unlawful for any person or group of persons to distribute or cause to be distributed, by any means, or in any manner, any handbills, posters, dodgers, paper cups, or like objects, in any public place, street, sidewalk, alley, or highway, within the City of Jackson, Mississippi without obtaining a permit therefor.

"Section 2. That any person or persons desiring to distribute or cause to be distributed by any means, or in any manner, handbills, posters, dodgers, paper cups, or like objects, shall make application to the City Council of the City of Jackson for a permit so to do. That the applicant shall accompany his application with a copy of the handbills, dodgers, posters, or paper cups. That at said hearing the City Council shall determine what bond shall be required of the distributors for the clearing up of said sidewalks or streets, and the removal of the debris caused by said distribution and to indemnify the City from any and all claims of damages that may be caused by the throwing of said handbills, dodgers, posters or paper cups upon the sidewalks and streets of the City. That in making the determination for the permit and bond the City Council shall take into consideration the size and volume of the posters, handbills, dodgers, paper cups or like objects, and upon what kind of paper the said handbills, posters, dodgers, paper cups, or like objects are made of, and the number of said handbills, posters, dodgers, papers cups, or like objects to be distributed, and the number of people that would be adversely affected thereby, and any and all other questions of fact to determine the size of the bond to be required.

"Section 3. That any one dissatisfied with the finding of the City Council shall have a right of appeal to the Circuit Court of Hinds County where the Court may hear and determine the application and make such order as should have been made by the City Council.

"Section 4. That any person convicted of a violation hereof shall be punished by a fine of not less than Five Dollars, nor more than One Hundred Dollars, or imprisonment not exceeding thirty days, or by both such fine and imprisonment.

"Section 5. That for cause this ordinance shall be in force and take effect from and after its passage."

On June 13, 1965, without first obtaining a permit therefor as required by the Ordinance in question, plaintiffs distributed certain leaflets in the City of Jackson. They were arrested and put in jail. Others engaged in distributing similar leaflets without a permit were arrested the following day.

A photocopy of the leaflet distributed by the plaintiffs on June 13 is exhibited in the record and appears to have been a "handmade" dodger, duplicated in some manner, reading as follows:

"M.F.D.P. protests ·
The Gathering on Monday
Of Miss. Law-makers . . . The
Illegally-Elected State
Legislators
        MASS RALLY
To-night—Morning Star Baptist
Church, Kane St., Off Mill, 8-30 pm.

                Miss. Freedom Democrat' "
FOR ALL PEOPLE—Party   ic'   ' "

The City says that the purpose of requiring a permit is "to prevent the sidewalks and the streets from becoming littered and unsightly and to prevent the sewer mains and culverts from becoming clogged and unsanitary, thereby creating an unsanitary condition detrimental to the health of the community and to prevent injury to pedestrians or damage to property or drainage difficulty".

Appellants charge that the ordinance imposes a prior restraint on communication, controls political expression and cannot be justified on city interest in clean streets. Further, that the bond requirements invalidate the ordinance.

The District Court heard the matter on complaint and answer. No testimony or other evidence was heard. The Court found that the ordinance "does not prohibit the distribution of handbills but merely regulates the distribution thereof by a permit and bond, that it was not a censorship ordinance, that it is solely designed and intended to prevent littering of the streets, etc.

■ A municipality can prohibit the use of its streets for the distribution of purely commercial leaflets, even though such leaflets may have a civic appeal or contain a moral platitude; Jamison v. State of Texas, 318 U.S. 413, 63 S.Ct. 669, 87 L.Ed. 869, (1943); Valentine v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942). The handbill or dodger distributed by these appellants was not a commercial leaflet, Jamison v. State of Texas, supra.

■ A municipality has the power to enact and enforce ordinances against throwing literature broadcast in the streets, Schneider v. State of New Jersey, Town of Irvington, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939). The ordinance presently under consideration contains no such prohibition.

■ An ordinance prohibiting a person rightfully on a public street from handing literature to one willing to receive it cannot be sustained on the argument that the purpose is to keep the streets clean, Schneider v. State of New Jersey, supra; Jamison v. State of Texas, supra.

■ Municipalities may enact regulations in the interest of the public safety, health, welfare or convenience, but these regulations may not abridge individual liberty, guaranteed by the Constitution, to speak, write, print or circulate information or opinion, Schneider v. State of New Jersey, supra, Jamison v. State of Texas, supra and Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938).

The City of Jackson argues that the Ordinance in question does not prohibit the circulation of handbills, that it simply regulates such circulation, placing much reliance, by analogy, on Poulos v. State of New Hampshire, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105, 30 A.L.R.2d 987 (1953).

The Supreme Court there said:

"The principles of the First Amendment are not to be treated as a promise that everyone with opinions or beliefs to express may gather around him at any public place and at any time a group for discussion or instruction.

It is a nonsequitur to say that First Amendment rights may not be regulated because they hold a preferred position in the hierarchy of the constitutional guarantees of the incidents of freedom. This Court has never so held and indeed has definitely indicated to the contrary. It has indicated approval of reasonable nondiscriminatory regulation by governmental authority that preserves peace, order and tranquility without deprivation of the First Amendment guarantees of free speech, press and the exercise of religion."

But the Court in Poulos quoted with approval what it had said in Kunze v. People of State of New York, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1950):

"[We] have consistently condemned licensing systems which vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places."

In *Poulos*, the validity of the ordinance with reference to licenses to speak in public parks was sustained because

"By its construction of the ordinance the State left to the licensing officials no discretion as to granting permits, no power to discriminate, no control over speech."

There is no Mississippi State Court interpretation of the Jackson Ordinance as there was in New Hampshire.

If the Jackson ordinance is to escape unconstitutionality upon its face, it must not have left the City Council with unfettered discretion as to granting the permit in question, with corresponding power to discriminate, and with like control over speech.

The ordinance requires those desiring to distribute handbills, posters, dodgers, * * * to apply for a permit to do so, *filing with the application a copy of that which is to be distributed.* Then, the City Council shall determine what bond is to be required for clearing up of sidewalks, and streets, etc., taking into consideration size and volume, etc.

■ We can find nothing in the ordinance which requires the Council to issue a license. The ordinance carries no command to grant an application, neither does it prescribe the criteria or standards upon which an application is to be denied. It is the law of Mississippi that where a power is granted to a public board to be exercised at "its discretion", the grant means a legal and not an arbitrary discretion, Board of Mississippi Levee Commissioners v. Kellner, 189 Miss. 232, 196 So. 779 (1940). We are compelled to the view, however, that when the ordinance is altogether silent as to when and under what circumstances the permit shall or shall not be granted, then there is no way to find out what would constitute legal discretion. Only unfettered power remains.

■ We are, therefore, of the opinion that this ordinance is indeed unconstitutional on its face and cannot be squared with constitutional guarantees.

This holding does not deprive the City of its authority to prohibit the use of its streets for the distribution of purely commercial leaflets. The City certainly can prohibit and punish the throwing of papers and like objects upon the streets. It cannot, under the guise of a license, to be issued at its sole discretion, prohibit one who is rightfully on the public streets from handing non-commercial handbills and like communications to those who are willing to receive them.

The Judgment of the District Court, holding the ordinance not to be invalid on its face, must be and is hereby reversed.

Plaintiffs sought injunctive relief as to further enforcement of the ordinance. From the record it appears that an injunction granted by this Court on June 30, 1965, and continued by order dated August 9, 1965, expires upon our disposition of these proceedings. As to injunctive relief, the case is remanded to the District Court for whatever relief may subsequently be needed by way of injunction. The invalidity of this Ordinance now having been decided by this

Court, we do not apprehend that the governing authorities of the City of Jackson will make any further effort to enforce it. The City is free, of course, to enact a valid ordinance in compliance with the principles herein announced.

The Judgment of the District Court upholding the Jackson City Ordinance of June 25, 1940 is reversed, and said Ordinance is declared invalid. As to injunctive relief, the case is remanded to the District Court for such action, if any, as may subsequently be needed.

Reversed and remanded.