UNITED STEELWORKERS OF AMERICA (AFL–CIO), an unincorporated association, and Joe Kirk, Jr., Appellants,

v.

J. Garner BAGWELL, Mayor, J. D. Myers, Chief of Police, and Wilkes Kivet, Wesley Shell, Sherman, Mitchell, Clarence Stimpson, Clement Wilhelm and A. L. Mills, Jr., Councilmen of the City of Statesville, North Carolina, Appellees.

No. 10130.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 4, 1966.

Decided Sept. 13, 1967.

Jerome A. Cooper, Birmingham, Ala. (Bernard Kleiman, Chicago, Ill., Elliot Bredhoff, Michael H. Gottesman, Washington, D. C., and James B. Ledford, and Ledford & Ledford, Charlotte, N. C., and Cooper, Mitch, Johnston & Crawford, Birmingham, Ala., on the brief), for appellants.

T. C. Homesley, Jr., Mooresville, N. C. (Collier, Harris & Collier, Statesville, N. C., on the brief), for appellees.

Before HAYNSWORTH, Chief Judge, and BRYAN and J. SPENCER BELL,* Circuit Judges.

HAYNSWORTH, Chief Judge:

We think the District Judge improperly abstained in this action to enjoin the enforcement of two municipal ordinances and that injunctive relief should have been granted.

By the passage of two ordinances,[1] the City of Statesville, North Carolina, sought to control the solicitation of memberships, for which there was a charge, in clubs, associations and unions by making it unlawful to distribute or place on

---

* Judge Bell expressed approval of the result in this case, though he died before the opinion was prepared.

1. Statesville, N.C., Code §§ 14–31.1, 14–5 (1947).

vehicles handbills or circulars,[2] and by requiring persons receiving pay for soliciting memberships in such organizations to obtain a license authorizing their activity.[3] Failure or refusal to comply with the provisions of the ordinances constituted a misdemeanor, punishable by a fine not exceeding fifty dollars or imprisonment not exceeding thirty days,[4] and each day of noncompliance with the licensing ordinance was considered a separate offense.[5]

After being informed that the ordinances were in force and that violators would be prosecuted, and without applying for the required license, the United Steelworkers, joined by their representative, Kirk, whose duties as a paid union organizer included solicitation of union memberships verbally and by distribu-

2. It shall be unlawful [without first having obtained a permit from the Chief of Police and approved by the City Council] for any person to distribute upon any street or sidewalk of the city or to place in any automobile or vehicle any circular, handbill, card, or poster; provided, however, that this section shall not apply to the distribution of newspapers carrying advertising matter nor to circulars, handbills, cards and posters exclusively advertising the candidacy of any person for public office or containing matter exclusively of a political or religious nature.
Statesville, N.C., Code § 14–5 (1947). The bracketed portion was added after this litigation began.

3. (a) Every person who, within the City of Statesville shall solicit membership or memberships in any club, association or union, where there is any charge for membership therein, shall prior to any solicitation of members thereof, apply to the Chief of Police for a license and upon the approval of the Chief of Police obtain from the City Clerk a license authorizing such activities upon his or her part, said license when issued to be valid for a period of thirty days only. Provided, however, this ordinance shall not apply to those persons, clubs, associations or unions where the solicitor or solicitors of membership receive no compensation for their services. A pre-requisite for the obtaining of such license shall be:
1. A showing that the applicant is of good moral character, by furnishing to the Chief of Police two (2) letters, from residents of Iredell County, substantiating such character.
2. That he or she has never been convicted of any offense against the laws of any State or of the United States wherein such crime involved moral turpitude or the commission of a felony.
3. That the applicant is not now, nor has ever been affiliated with, or a member of, any organization or group listed by the Attorney General of the United States as subversive, or any organization of communistic nature or advocating the violent overthrow of the Government of the United States or any State.
4. That applicant agrees to be fingerprinted.
5. A payment in the sum of $1 to the City Clerk as a licensee fee.
6. A statement of the name of said club, association or union for which membership is so solicited.
7. It being expressly understood that a separate license must be obtained by each person that solicits memberships as hereinabove provided, in order that a firm, partnership or corporation cannot obtain a license that would be valid for all persons in said firm, partnership, or corporation to use.
8. In addition to the above required information, the person, firm, association, partnership, or corporation must first list the location and address of the principal office and place of business together with the local office of business and, if a corporation, the name of its President and Secretary & Treasurer, and their respective addresses.
(b) Any person, firm or corporation who shall fail or refuse to comply with the provisions of this ordinance, shall upon conviction thereof, be punished as provided in the Code of the City of Statesville for violations of City Ordinances and each day that this ordinance is not complied with as provided, shall be deemed a separate offense.
(c) Be it further ordained that all ordinances or parts of ordinances, in conflict herewith be, and the same hereby are repealed, and if any part of this ordinance should be declared invalid, then in that event, any part not so declared invalid shall be in full force and effect.
Statesville, N.C., Code § 14–31.1 (1947).

4. G.S.N.C. § 14–4 (1953).

5. Statesville, N.C., Code § 14–31.1 (1947).

tion of printed material, brought an action in the District Court to enjoin enforcement of the ordinances and for an order declaring them unconstitutional. The District Court denied injunctive relief and dismissed the complaint because it was of the opinion that the complaint did not allege facts sufficient to show imminent danger of irreparable loss and that assertion of constitutional claims defensively in any criminal proceeding which might be brought in the state court was an adequate remedy.[6] Thereafter a motion for a new trial was timely filed, and, while that motion was under consideration, the Court's attention was called to the decisions of the Supreme Court in Dombrowski v. Pfister[7] and Harman v. Forssenius.[8] Later, while expressing the opinion that *Dombrowski* represented a change in the governing rules concerning injunctions against state criminal prosecutions, the court denied the motion for a new trial on the ground that such a change in the law was an insufficient reason for granting a new trial or vacating a judgment under either Rule 59 or Rule 60 of the Federal Rules of Civil Procedure.

The subsequent notice of appeal brought the entire case here.

We think the District Court should have reconsidered its conclusion in the light of *Dombrowski*. A final

judgment had been entered, but by reason of the motion for a new trial the case was still in the bosom of the court. The judgment had not acquired that finality which would have accrued to it if no motion for a new trial had been filed and the time for appeal had expired. Certainly, in this court, on the appeal of the case, we must govern ourselves by *Dombrowski's* teaching, and the District Court should have done so as long as the case was within its jurisdiction.

The abstention doctrine warrants refusal to exercise properly invoked federal jurisdiction to adjudicate the constitutionality of a state statute, if there is doubt about the statute's applicability to the challenger or to his conduct and when construction of the statute by the state court may remove the constitutional issue from the case.[9] When, however, the statute is obviously applicable to the plaintiff and his course of conduct or when the statute is not susceptible to a construction that will otherwise avoid the necessity of deciding a constitutional question, a federal court may not properly stay its hand.[10]

The general statutory prohibition against federal injunctions staying proceedings in a state court[11] is inapplicable because no such proceedings have been commenced.[12] Nor, in the circumstances of this case, is the issuance of an injunc-

6. United Steelworkers of America v. Bagwell, W.D.N.C., 239 F.Supp. 626 (1965).

7. 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

8. 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965).

9. Harrison v. NAACP, 360 U.S. 167, 168, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1958); City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639, 79 S.Ct. 455, 3 L. Ed.2d 562 (1958); Government & Civic Employees Organizing Comm., C.I.O. v. Windsor, 353 U.S. 364, 77 S.Ct. 838, 1 L. Ed.2d 894 (1956); Leiter Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1956); Albertson v. Millard, 345 U.S. 242, 73 S.Ct. 600, 97 L. Ed. 983 (1952); Shipman v. DuPre, 339 U.S. 321, 70 S.Ct. 640, 94 L.Ed. 877 (1949); Stainback v. Mo Hock Ke Lok Po, 336 U.S. 368, 69 S.Ct. 606, 93 L.Ed.

741 (1948); Musser v. State of Utah, 333 U.S. 95, 68 S.Ct. 397, 92 L.Ed. 562 (1947); A. F. L. v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873 (1945); Alabama State Fed. of Labor v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 (1944); Spector Motor Service Co. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944); City of Chicago v. Fieldcrest Dairies, Inc., 316 U.S. 168, 169, 62 S.Ct. 986, 86 L.Ed. 1355 (1942); Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1940).

10. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Harman v. Forssenius, 380 U.S. 528, 85 S. Ct. 1177, 14 L.Ed.2d 50 (1965).

11. 28 U.S.C.A. § 2283.

12. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Ex

tion proscribed by the policy enunciated in Douglas v. City of Jeanette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943).

The ordinances are patently unconstitutional, as we shall presently see. But until their constitutionality has been adjudicated, the threat of prosecution under them inevitably inhibits the exercise by Kirk and other union organizers of their first amendment rights. Distribution of union literature and solicitation of members for the union, the activity in which Kirk is engaged, is within the first amendment's protection of freedom of speech and of association.[13] The fourteenth amendment restrains the City of Statesville from enforcing ordinances which prevent or substantially restrict exercise of those rights.[14]

Kirk has not been prosecuted under either ordinance. It may be that fear of prosecution has deterred him from distributing literature and soliciting union members within the limits of Statesville, in which event a chilling effect upon the constitutionally protected conduct posed by the threat to enforce the ordinances would be clearly present. Even if Kirk has gone about his business in violation of the ordinances and Statesville has simply delayed commencement of the enforcement proceedings, the threat of enforcement is strongly calculated to have a restraining effect. Kirk will not be likely to have distributed as many handbills as he otherwise would have and any solicitation of members in which he has engaged would be less open and obvious. And unless delay in prosecution diminishes the threat of prosecution, the threat becomes

much heavier, for each day's delay in securing a license is a separate offense and the penalties mount rapidly.[15] This is precisely the kind of situation in which injunctions against threatened prosecutions were held to be appropriate in *Dombrowski*.

The District Court was influenced by its opinion that the state courts would not enforce the ordinances. The fact that the antilitter ordinance was not enforced by Statesville's Recorder, did not deprive the threat of enforcement of that ordinance of its chilling effect as *Dombrowski* teaches. Nor is there any basis of objection in the fact that Kirk has not applied for a license. The license fee of $1 is not substantial, but compliance with ¶ (a)3 of § 14–31.1 may well have been impossible. In any event, he was not required to comply with the ordinance in order to attack its constitutionality.[16]

We conclude, therefore, that the District Court should have granted appropriate injunctive relief if the ordinances are unconstitutional, as the District Court apparently thought and as we hold.

The antilitter ordinance is plainly unconstitutional. A municipality may prohibit the distribution of commercial advertisements on its streets and the throwing of litter upon its streets and sidewalks, but its interest in keeping the streets clean does not warrant an ordinance forbidding the distribution to willing recipients of handbills expressing ideas and opinions.[17]

parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

13. Schneider v. State (Irvington), 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945); Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958).

14. See the cases cited in the preceding footnote. See also Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed. 2d 22 (1964) and Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938).

15. We may suppose that Kirk has not been prosecuted because of the pendency of this case, but if the injunction is denied and he has been acting in violation of the ordinance, the penalties may be quite substantial.

16. Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958).

17. Schneider v. State (Irvington) 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); Jamison v. State of Texas, 318 U.S. 413, 63 S.Ct. 669, 87 L.Ed. 869 (1943); Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); Strother v. Thompson, 5 Cir., 372 F.2d 654.

The ordinance here provides for a permit for distribution of such handbills, but the granting of such a permit is within the uncontrolled discretion of the chief of police and the city council. The ordinance contains no standards directed toward the exercise of their discretion. Without such standards, the ordinance gives them the right of withholding permits for the distribution of proper, constitutionally protected literature. As such, it clearly cannot be squared with the fourteenth amendment.[18]

The license ordinance can fare no better.

If it were simply a revenue measure imposing a reasonable license fee upon solicitors of union memberships and upon salesmen of other ideas and of goods, we would have a different case. It is not that sort of measure. It is a regulatory ordinance prescribing the qualifications of union organizers. A similar statute was stricken in Hill v. State of Florida ex rel. Watson,[19] as being in conflict with the National Labor Relations Act.[20]

By § 7 of that Act employees are guaranteed a free choice in the selection of their collective bargaining representatives. It was held in *Hill* that Florida could not limit that choice to representatives meeting qualifications and prerequisites which it prescribed.

The licensing ordinance is susceptible to the construction that a grant of a license is not required even to an applicant who meets all of its stated "pre-requisites," in which event the ordinance would offend the requirement of Staub v. City of Baxley,[21] though Statesville disowns that construction. Statesville, however, cannot avoid by construction the fatal defect of the third "pre-requisite." That requires an applicant to show that he has never had any affiliation with any "organization or group listed by the Attorney General of the United States as subversive, or any organization of communistic nature or advocating the violent overthrow of the Government of the United States or any State." That requirement is so vague and indefinite that a large proportion of the population must entertain grave doubt as to whether or not it applied to them. To exact an oath of such vague and extensive reach as a condition of the exercise of first amendment rights is itself a denial of due process.[22]

Nor is such membership a permissible basis for legislative prohibitions against the exercise of first amendment rights.[23]

Since the plaintiffs are entitled to injunctive relief against the enforcement of these unconstitutional ordinances, the judgment dismissing the complaint will be vacated and the case remanded to the District Court for entry of an appropriate injunctive order.

Reversed and remanded.

18. Kunze v. People of State of New York, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951); Strother v. Thompson, 5 Cir., 372 F.2d 654.

19. 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782 (1945).

20. 29 U.S.C.A. § 151 et seq.

21. 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958).

22. Baggett v. Bullitt, 377 U.S. 360, 84 S. Ct. 1316, 12 L.Ed.2d 377 (1964).

23. Keyishian v. Board of Regents, 385 U.S. 589 (1966).