Amos S. Basel, J.
The defendant is charged with violating section 701.2 of the Rules for the Regulation of the Use of the New York City Transit System. The section reads: “ No person shall distribute any hand-bill or display any flag, banner, sign, or matter on or within the New York City Transit System.” The rules are promulgated pursuant to section 1200 et seq. of the Public Authorities Law. Violation is punishable by fine of $25 or imprisonment for not longer than 10 days or both.
On December 20, 1967 at about 2:10 p.m. the defendant, a college student, received a summons from a police officer while distributing a leaflet on the southbound platform of the 34th Street station of the Independent Subway. This handbill, headlined *327 “ Peace on Earth ”, contained an anti-war poem by Mark Twain and a message urging the termination of the Vietnam war.
Defendant testified he accepted this circular from another young man on the street. After reading it, he was moved by the spirit of Christmas to dispense this message, which had touched him, to others. He acquired an armful of leaflets and determined to pass them out at 34th Street where large crowds were Christmas shopping. When he reached his destination, he observed great numbers of people emerging from and entering the subway. He posted himself on the 34th Street southbound platform of the Independent System and undertook distribution, whereupon the police officer issued the summons.
Defendant seeks to have the summons dismissed upon the ground the regulation pursuant to which it was issued unconstitutionally abridged his right of free expression under the First and Fourteenth Amendments of the Federal Constitution.
Subdivision 16 of section 1204 of the Public Authorities Law conférs upon the Transit Authority, which operates the subways, the power to maintain a police force. Pursuant thereto, numerous regulations have been propagated, including the section under consideration.
The question here to be determined is, does this regulation “ deny or unwarrantedly abridge * * * the opportunities for communication of thought and the discussion of public questions immemorably associated with resort to public places ” (Cox v. New Hampshire, 312 U. S. 569, 574).
The right to distribute leaflets in public places is no longer in dispute (Schneider v. State, 308 U. S. 147). The Supreme Court has recognized that ‘' distribution of circulars is essential to the poorly financed causes of little people.” (Martin v. Struthers, 319 U. S. 141,146.) Cheaply printed polemics individually circulated “ have been historic weapons in the defense of liberty ”. (Lovell v. Griffin, 303 U. S. 444, 452.) This right becomes of increasing importance in our era of high-cost mass communications. We must preserve and protect the right of financially reduced advocates to communicate with others or we deliver opinion-making in our society to those able to employ Madison Avenue technicians and to purchase prime television time. A cheap handbill is still effective, as witness the manner in which this defendant was motivated. We must vigorously protect the rights of the little man to stir dissent and controversy. The Tom Paines seldom belong to the Establishment; their protection is the essence of the First Amendment.
In 1939, the Supreme Court said in Hague v. C.I.O., (307 U. S. 496, 515): “ Wherever the title of streets and parks may rest, *328 they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.”
In a long series of subsequent cases, the ground rules were fixed. As the court said: " Although a municipality may enact regulations in the interest of public safety, health, welfare or convenience, these may not abridge the individual liberties secured by the Constitution to those who wish to speak, write, print or circulate information or opinion ” (Schneider v. State, supra, p. 160).
See, also, Cox v. Louisiana (379 U. S. 536); Staub v. City of Baxley (355 U. S. 313); Niemotko v. Maryland (340 U. S. 268); Largent v. Texas (318 U. S. 418); Jamison v. Texas (318 U. S. 413); Lovell v. Griffin (303 U. S. 444); People v. Katz (21 N Y 2d 132); People v. Strauss (48 Misc 2d 1006). This rule also extends to the streets of a company town (Marsh v. Alabama, 326 U. S. 501); to preaching in a Federal housing project (Tucker v. Texas, 326 U. S. 517); to a railroad station (Matter of Hoffman, 434 P. 2d 353 [Sup. Ct., Cal.]); and, most recently, to the Port of New York Authority Bus Terminal (Wolin v. Port of New York Auth., 392 F. 2d 83).
The instant case ventures one step beyond and poses the question, does the right of free expression, protected on the street and in the terminal, expire upon entrance into the subway? Does the purchase of a 20-cent token condemn the passenger to silence?
No distinction can be wrung for First Amendment purposes between a subway platform and a public street. The subway is a mass transit facility owned by the city, allowed to proceed beneath' and often above the public streets, and operated by the Transit Authority, not for gain but for service and convenience. The fare is a small percentage of the total per passenger share of ownership and operation. The 20-cent payment is a tiny admission tax imposed on the user. It is properly christened a “ token”, for the full cost falls on all the inhabitants, all of whom benefit from its operation. New York has become a great metropolis largely through the existence of its cheap and rapid transportation system. This brought outlying areas of Queens, Bronx and Brooklyn close to the center and made it possible for people to work, live, shop and seek entertainment quickly, cheaply, within the city limits. It is used daily by millions. It is an underground thoroughfare operated for the benefit of the community. This is confirmed by the Rapid Transit Law of New York (art. 4, § 31, subd. e): “ Any railroad constructed by and at the expense of the city shall be and remain the absolute prop *329 erty of the city, and shall be and be deemed to be a part of the public streets of the city, to be used and enjoyed by the public subject to such reasonable rules and regulations as may be imposed and provided for by the board of transportation ” (now the Transit Authority)".
By the test of the court rulings on the right of free expression in public places, we must hold that a public utility so charged with city life cannot bar circulation of a handbill and the possible imprisonment of its distributor, who seeks to touch the conscience of the community as he sees it.
This is not to say that the Transit Authority cannot take action to protect legitimate interference with the subway’s use. It can make reasonable regulations to forbid distribution of purely commercial material. It could provide reasonable rules governing the method of circulating leaflets so as to avoid danger and interference with the safe functioning of the railroad.
No interference with the normal operation of the subway was proven here. It is under the blanket rule that defendant is charged. So broad a restriction is, in my view, unconstitutional, for the Transit Authority may not “ abridge the constitutional liberties of one rightfully upon the street to impart information through speech or the distribution of literature ”. (Schneider v. State, 308 U. S. 147, 160, supra.)
It is the rationale of our system of society that it is better to inconvenience some (short of affecting their health and safety), rather than confine free expression in public places. The First Amendment does not terminate upon the purchase of a 20-cent token. The contest for men’s minds, the “ free trade in ideas ” (Abrams v. United States, 250 U. S. 616,630, Holmes, J., dissenting) cannot expire upon a subway platform or the First Amendment to our Constitution has gone partially underground. We hold with Scripture, " In the multitude of counsellors, there is safety.” (Proverbs, ch. 11,14.)
For all of the foregoing reasons, the defendant’s motion is granted. He is found not guilty.