Max H. Galfunt, J.
The defendant is charged with violating subdivision 5 of section 755(2)-7.0 of the Administrative Code of the City of New York, which prohibits littering and, more specifically, prohibits the distribution of purely commercial or business advertising material. A trial was held on the question and the following facts, which the defendant does not dispute, were adduced.
On January 30, 1974 defendant was distributing handbills to pedestrians in front of Madison Square Garden -in New York County. The handbills contained information that a concert was to be performed starring certain well-known jazz musicians and artists at Philharmonic Hall. The various prices of admission tickets were displayed on the handbill, No other information appeared on the handbill.
Defendant stated that he was distributing the handbills for New Audience Productions; they were the producers and promoters of the particular jazz concert mentioned in the handbills. Defendant received a concert admission ticket from New Audience Productions in lieu of monetary payment for his work.
Subsequently, the defendant was issued a summons and charged with violating subdivision 5 of section 755(2)-7.0 of the Administrative Code of the City of New York. At the end of the trial, the defendant made a motion to have the charge currently pending dismissed.
Defendant contends that the concert in question was “ speech ” within the concept of the First Amendment and is thus entitled to that amendment’s full protection. Further, the defendant contends that an advertisement for a concert— an event which is protected by the First Amendment — differs from ‘ ‘ purely commercial advertising. ’ ’
The defendant also concludes that subdivision 5 of section 755(2)-7.0 is unconstitutional as applied to this case and is unconstitutionally overbroad on its face.
Subdivision 5 of section 755(2)-7.0 states: “ No person shall throw, cast or distribute, or cause or permit to be thrown, cast or distributed, any handbill, circular, card, booklet, placard or other advertising matter whatsoever, in or upon any street or public place, or in a front yard or courtyard, or on any stoop, *162 or in the vestibule of any hall in any building, or in a letter box therein; provided that nothing herein contained shall be deemed to prohibit or otherwise regulate the delivery of any such matter by the United States postal service, or prohibit the distribution of sample copies of newspapers regularly sold by the copy or by annual subscription. This section is not intended to prevent the lawful distribution of anything other than commercial and business advertising matter. (Emphasis added.)
This court will concede that the concert represented such expression as to be protected by the First Amendment.
Nevertheless, the court does not conclude that the handbills and leaflets advertising the concert are so protected by the First Amendment. The defendant’s distribution of the handbills or leaflets advertising the concert did fall within the purview of subdivision 5 of section 755(2)-7.0 of the Administrative Code which seeks to prohibit the distribution of purely commercial or business advertising.
A case directly in point with the one before this court is Valentine v. Chrestensen (316 U. S. 52). In that case, defendant was the owner of a former United States Navy submarine. He exhibited it for profit. He moved his submarine in the East River in New York City. He printed handbills advertising the boat and solicited visitors for a fee. When he attempted to distribute the handbills, he was advised by the Police Commissioner that the distribution of the handbills would violate section 318 of the Sanitary Code.* Defendant was informed that he could distribute handbills solely devoted to ‘ ‘ information or a public protest.”
Defendant then modified his handbill so that one side consisted of the commercial advertising of his submarine without any reference to the admission fee. The other side of the handbill contained a protest over the action of the City Dock Department in refusing defendant the use of a city pier for dockage of his submarine,
*163 Defendant was advised that the modified bill would violate section 318, for one side did contain commercial advertising. Defendant was thus prevented from distributing his handbill.
In answering .the question as to whether the application of the ordinance was an unconstitutional abridgement of the freedom of the press and of .speech, the court stated (pp. 54^55): “ This court has unequivocally held that the streets are proper places for the exercise of the freedom of communicating information and disseminating opinion and that, though the states and municipalities may appropriately regulate the privilege in the public interest, they may not unduly burden or proscribe its employment in these public thoroughfares. We are equally clear that the Constitution imposes no such restraint on government as respects purely commercial advertising. Whether, and to what extent, one may promote or pursue a gainful occupation in the streets, to what extent such activity shall be adjudged a derogation of the public right of user, are matters for legislative judgment. The question is not whether the legislative body may interfere with the harmless pursuit of a lawful business, but whether it must permit such pursuit by what it deems an undesirable invasion of, or interference with, the full and free use of the highways by the people in fulfillment of the public use to which streets are dedicated. If the respondent was attempting to use the streets of New York by distributing commercial advertising, the prohibition '¡of the code provision was lawfully invoked against his conduct(Emphasis added.)
The court, in holding the statute constitutional, went on to state that the affixing of the defendant’s protest against the City of New York to the handbill was with the view toward sidestepping the prohibition of the ordinance. If that were permitted, the court stated (p. 55) “ every merchant who desires to broadcast advertising leaflets in the streets need only append a civic appeal, or a moral platitude, to achieve immunity from the law’s command. ’ ’
Municipalities, such as the City of New York, may enact local rules and regulations in the interest of public safety, health, welfare, or convenience of its citizenry. But these legislative enactments may not abridge the individual liberties to speak, write, print, or circulate information or opinions. (Schneider v. State, 308 U. S. 147; Jamison v. Texas, 318 U. S. 413.)
This court feels that the statute, subdivision 5 of section 755(2)-7.0 of the Administrative Code, does not abridge individual freedoms.
The right to distribute leaflets in public places is not a matter of conjecture (Schneider v. State, supra; People v. St. Clair, 56 *164 Misc 2d 326). The Supreme Court has recognized that distribution of circulars is vital to causes with limited financial capabilities. (Martin v. Struthers, 319 U. S. 141.) Such leaflets, printed at little cost and circulated individually, ‘ ‘ have been historic weapons in the defense of liberty.” (Lovell v. Griffin, 303 U. S. 444, 452.) The leaflet or handbill presents a cheap, convenient way of expressing a wide spectrum of views: protesting the Vietnam War (People v. St. Clair, supra; People v. Strauss, 48 Misc 2d 1006); attacking “ blockbusting ” techniques of a real estate broker (Organisation for a Better Austin v. Keefe, 402 U. S. 415); soliciting union members (United Steel Workers of Amer. [AFL-CIO] v. Bagwell, 383 F. 2d 492); protesting representation of a political party’s slate at a national convention (Strother v. Thompson, 372 F. 2d 654); presenting religious views and offering religious texts for sale at prices below cost of distributor. (Jamison v. Texas, 318 U. S. 413.)
A closer examination of the above-cited cases reveals that they are distinguishable and none revolved around the issue of commercial or business advertising; the cases were concerned with expressing ideas and opinions, reciting grievances, or protesting alleged wrongdoings. Defendant’s leaflet, giving a performance date, the name of performers, and admission price, is purely commercial or business advertising.
Defendant’s conduct in distributing leaflets, in the case before this court, being of a purely commercial nature, can be prohibited by subdivision 5 of section 755(2)-7.0. The fact that the handbills are advertisements for a concert is of little significance. The fact that a concert represents a form of expression does not cause its purely commercial advertising leaflets to be also protected. By prohibiting such leaflets from being distributed, the City of New York is not preventing the concert from taking place -or in any way inhibiting it.
The defendant has cited certain cases which he interprets as limiting the Valentine case. (Pittsburgh Press Co. v. Human Rel. Comm., 413 U. S. 376, dealt with illegal sex discrimination in the ‘ ‘ want-ads ” section of a newspaper; New York Times Co. v. Sullivan, 376 U. S. 254, concerned an alleged libel of a city official through an advertisement in the Times regarding police action in Alabama against student demonstrations; Dun & Bradstreet v. Grove, 404 U. S. 898, revolved around the issue of the liability of incorrect financial data which in turn resulted in a poor credit rating.) The court, having read these cases, feels that the defendant has sought to attack the holding of Valentine through recent decisions of the Supreme Court discussing libel and sex discrimination in “ want ads.”
*165 Therefore, while some aspects of the law governing commercial advertising may change, the court feels that Valentine v. Chrestensen (supra) upholding a statute exactly the same as the one now before this court, is constitutional and, covering th( topic of commercial or business leaflets, should govern this court’s decision.
In conclusion, this court would like to quote from United States v. Hunter (459 F. 2d 205, 211) which, in citing Valentine v. Chrestensen and other cases, stated: “ The court’s conclusion is supported by an unbroken line of authority from the Supreme Court down which distinguishes between the expression of ideas protected by the First Amendment and commercial advertising in a business context. It is now well 'Settled that, while ‘ freedom of communicating information and disseminating opinion ’ enjoys the fullest protection of the First Amendment, £ the Constitution imposes no such restraint on government as respects purely commercial advertising.’ ”
Thus, the defendant’s motion to have the charge of violating subdivision 5 of section 755(2)-7.0 of the Administrative Code of the City of Few York dismissed and to have this court declare said statute unconstitutional is denied. The defendant is found guilty of violating subdivision 5 of section 755(2)-7.0 of the Administrative Code.

 Section 318 of the Sanitary Code in 1942 was exactly the same as subdivision 5 of section 755(2)-7.0 of the Administrative Code and stated as follows: “ Handbills, cards and circulars.— iSTo person shall throw, east or distribute, or cause or permit to be thrown, cast or distributed, any handbill, circular, card, booklet, placard or other advertising matter whatsoever in or upon any street or public place, or in a front yard or court yard, or on any stoop, or in the vestibule or any hall of any building, or in a letterbox therein; provided that nothing herein contained shall be deemed to prohibit or otherwise regulate the delivery of any such matter by the United States postal service, or prohibit the distribution of sample copies of newspapers regularly sold by the copy or by annual subscription. This section is not intended to prevent the lawful distribution of anything other than commercial and business advertising matter.”